UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Jason L. Hubbartt and
    Michele M. Hubbartt,                          Case No. 16-21251-beh

            Debtors.                                   Chapter 7

Backus Electric, Inc.,

            Plaintiff,

v.                                                      Adversary No. 16-02152-beh

Jason L. Hubbartt,

            Defendant.

## DECISION REGARDING DEFENDANT'S
## MOTION FOR CONTEMPT AND SANCTIONS

Despite a plain order requiring plaintiff to abstain from seeking to collect a state court judgment, if one was forthcoming, until the bankruptcy court rendered a decision in the pending adversary proceeding, plaintiff, via counsel, violated the order. The balance of the present motion is a dispute as to the proper type and measure of sanctions.

### JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

### FACTS

The following facts are taken from the briefs and affidavits submitted by the parties. The debtors, Mr. Jason Hubbartt and Mrs. Michelle Hubbartt, filed for Chapter 7 relief under the Bankruptcy Code on February 18, 2016. ECF

Doc. No. 1.[1] On April 25, 2016, Backus Electric, Inc. filed an adversary proceeding against Mr. Jason Hubbartt to determine the dischargeability of an alleged debt under 11 U.S.C. § 523(a)(4) and (a)(6). AP-ECF Doc. No. 1. The adversary complaint mirrored, in large part, a complaint that Backus already had filed against Hubbartt and two other defendants in Manitowoc County Circuit Court.

Because the state court had not yet determined Mr. Hubbartt's liability under Wisconsin law and what, if any, damages were owed, this Court abstained in part to allow the state court proceedings to move forward on those matters. AP-ECF Doc. No. 25. The Court's July 28, 2016 order reads,

- **IT IS HEREBY ORDERED** that this court shall abstain from hearing and determining any issues raised by the plaintiff's complaints other than the determinations of nondischargeability to be made under Bankruptcy Code sections 523(a)(4) and 523(a)(6).
- **IT IS FURTHER ORDERED** that the parties shall continue the pending litigation in Manitowoc County Circuit Court, Case No. 2013-cv-00517.
- **IT IS FURTHER ORDERED** that proceedings in this adversary proceeding will be held in abeyance pending the entry of a final nonappealable judgment in the Manitowoc County Circuit Court case. Upon the entry of such a judgment, whether after trial, by settlement or otherwise, the prevailing party shall notify this court and all other parties to this adversary proceeding in writing.
- **IT IS FURTHER ORDERED** that, if the Manitowoc County Circuit Court renders a judgment for money damages in favor of the plaintiff, *the plaintiff shall not take any action to collect that judgment until this court has rendered final judgment in this adversary proceeding,* and such judgment is in the plaintiff's favor.

*Id.* (emphasis added).

---

[1] Citations to the docket in the Bankruptcy Case No. 16-21251-beh are noted by "ECF Doc. No." Citations to the docket in the Adversary Proceeding No. 16-02152-beh are noted by "AP-ECF Doc. No."

After three years of litigation in state court, including some effort at pre-trial mediation, on May 17, 2019, the proceedings concluded in a jury verdict in favor of Backus and awarding $555,562.00 in compensatory damages and $1,000,000.00 in punitive damages.[2]  AP-ECF Doc. No. 33, at 2–3.

Three days later, Mr. Hubbartt's state court counsel, Attorney Andrew Micheletti, received a phone call from Backus' state court counsel, Attorneys John Mayer and Ryan Graff, who were seeking to collect on the judgment. According to Mr. Micheletti's affidavit, Attorney Mayer stated "that he would garnish Hubbartt until the day he dies," and suggested the defendant pay the judgment in full to prevent the accumulation of substantial interest.  Attorney Micheletti asked whether this was a settlement offer.  AP-ECF Doc. No. 47-2, at 2.  Attorney Micheletti said that he would speak to bankruptcy counsel and his client.  On May 23, 2019, Attorneys Mayer and Graff filed a petition in state court, seeking a writ of attachment.  The petition asserts, without appending any supporting documentation, that Mr. Hubbartt "disposed of or concealed or is about to conceal the defendant's property or some part thereof with intent to defraud defendant's creditors." *Id.* at 13.  Mr. Hubbartt's counsel responded by filing a copy of this Court's July 28, 2016 order in the state court proceeding. On June 4, 2019, Backus's counsel withdrew the petition for writ of attachment.

On June 5, 2019, Mr. Hubbartt's bankruptcy counsel filed a motion in this Court, seeking to declare Backus in contempt and for an award of sanctions for its counsel's actions in trying to collect the debt.  AP-ECF Doc. No. 33.  In Mr. Hubbartt's motion, counsel asserted that contempt sanctions were appropriate because (1) sanctions would compensate the debtor for the

---

[2] Note that the defendants in the state court matter (Jason Hubbartt, Hubbartt Electric Inc., et al.) first moved for a New Trial or Remittitur, which was denied by default, and now the verdict is on appeal.  The Court may take judicial notice of the contents of the state court docket under Federal Rule of Evidence 201 because they are matters of public record available via an online database commonly known as CCAP (Consolidated Court Automation Programs).  *In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018); *see also Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008) ("a court is of course entitled to take judicial notice of judicial proceedings"); *United States v. Doyle*, 121 F.3d 1078, 1088 (7th Cir. 1997) (taking judicial notice of district court's docket sheet).

damages he suffered and (2) sanctions are appropriate to coerce future compliance with the discharge injunction. *Id.* The motion argued that the Court's abstention order "was operating in the same injunctive capacity" as a discharge order, and cited *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). *Id.* The motion sought actual attorney fees and costs incurred, an award of compensatory damages "sufficient to compensate the debtors for the mental anguish and distress suffered," and an award of punitive damages sufficient to deter future violations. *Id.*[3]

Backus admitted to contacting Mr. Hubbartt's counsel several times on May 20 and admitted to filing the petition for a writ of attachment. AP-ECF Doc. No. 35. In its defense, Backus asserted that its state court counsel was aware of the existence of the abstention order, but "was not specifically aware of any limitations contained therein as it may pertain to the collection" of the judgment from the state court. *Id.* As soon as the state court counsel reviewed the order, as docketed in the state court case by Mr. Hubbartt's counsel, Backus asserts that it immediately withdrew the petition for the writ of attachment, and contended that it was not considered by the state court. AP-ECF Doc. No. 37. Backus claims there was no harm to Mr. Hubbartt or his counsel, and that the present motion for contempt was "unnecessary, unfounded, and without merit." *Id.*

**A.  The Parties' Arguments**

After reviewing the affidavits and legal briefing submitted, the Court held a hearing on November 14, 2019. The Court found that Backus, by seeking to collect the state court judgment, acted in violation of the Court's July 28, 2016 order. The Court requested supplemental affidavits to determine the amount of damages. AP-ECF Doc. No. 44. The supplemental filings included affidavits of counsel and briefing that argued for and against the award of actual and punitive damages under 11 U.S.C. § 362(k). AP-ECF Doc. No. 47; ECF Doc.

---

[3] The motion for contempt describes both debtors as the movants, but only Jason Hubbartt is a named defendant in the adversary complaint.

No. 15.  Mr. Hubbartt asserted that section 362(k) required actual damages and warranted punitive damages in this situation.  He discussed six factors to persuade the Court to award punitive damages, citing *In re Swindle*, 584 B.R. 259, 267 (Bankr. N.D. Ill. 2018) (quoting *In re Shade*, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001), *aff'd*, 390 B.R. 881 (N.D. Ind. 2008), *aff'd*, 563 F.3d 627 (7th Cir. 2009).

In response, Backus did not argue against the application of section 362(k) but asserted that the actual damages claimed were not reasonable and that punitive damages were not warranted under the *In re Swindle* factors.

The Court then requested additional briefing as to whether and how section 362(k), which speaks to damages due to a willful violation of the automatic stay, could apply where (1) the stay was no longer in effect due to the debtors' receipt of a discharge over three years earlier and (2) the admitted violation was of a court order, here in a pending nondischargeability proceeding.  AP-ECF Doc. No. 51.  Mr. Hubbartt again likened the action taken by Backus to that of a violation of the discharge injunction and continued to assert that punitive damages were warranted under either section 362(k) or section 105(a).  AP-ECF Doc. No. 53.  Backus argued that the issue turned on actual damages available under civil contempt of a court order, under section 105(a) alone.  ECF Doc. No. 21.

**DISCUSSION**

**A.     Does section 362 apply?**

The automatic stay of 11 U.S.C. § 362(a) prevents any party from collecting a debt or enforcing a judgment against the debtor.  The moving party bears the burden of proving violations of the automatic stay by a preponderance of the evidence.  *In re Swindle*, 584 B.R. at 266.  Section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  To recover damages under section 362(k), the movant must show "(1) that the stay

was violated; and (2) that the debtor is entitled to compensation." *In re Gorokhovsky*, No. 17-28901-beh, 2018 WL 3325716, at *3 (Bankr. E.D. Wis. July 5, 2018).

When turning to the first element—whether the automatic stay was violated—the inapplicability of section 362 here becomes clear. The automatic stay terminates upon the earliest of: (A) the close of the case; (B) the dismissal of the case; or (C) the grant or denial of the individual's Chapter 7 discharge. 11 U.C.S. § 362(c)(2)(A)–(C). Both Hubbartt and his wife were granted a general discharge on July 22, 2016. Backus's collection actions occurred nearly three years later, in 2019. Therefore, the Court cannot assess sanctions under the authority of section 362(k) because whether the stay was violated became a moot issue once Hubbartt's general discharge was entered. *See In re Wagner*, 87 B.R. 612, 618 (Bankr. C.D. Cal. 1988) (finding that section 362 could not apply after discharge); *In re McCain*, No. 03-04624, 2004 WL 5272234, at *2 (Bankr. D. Idaho Aug. 19, 2004) (finding that sending collection letters was not a violation of the automatic stay because the debtor's discharge had been entered, and there was no stay in effect at the time).

**B.     Does section 524(a)(2) apply?**

In both Mr. Hubbartt's initial motion for contempt as well as his final briefing, counsel asserts that Backus's action by contacting Mr. Hubbartt's counsel and by filing a petition for writ of attachment violated the discharge injunction under 11 U.S.C. § 524(a)(2), directly, or by analogy. As the moving party, Mr. Hubbartt again bears the burden to prove that Backus violated the discharge injunction. *In re Osorio*, No. 13-25522-GMH, 2017 WL 1194450, at *3 (Bankr. E.D. Wis. Mar. 30, 2017). In his endeavor, the first hurdle is to prove that the debt was, in fact, discharged. *In re Weinhold*, 393 B.R. 623, 628 (Bankr. E.D. Wis. 2008) (citing *In re Stoneking*, 222 B.R. 650 (Bankr. M.D. Fla. 1998) ("The primary issue in any action to enforce the § 524(a) injunction is whether the debt is one which was discharged.")). But Hubbartt has put the cart before the horse. Here, the pendency of this adversary proceeding, which

was filed to determine whether this particular debt is dischargeable, negates the argument that sanctions could arise out of section 524.

**C.     Civil Contempt and Sanctions**

The bankruptcy court is imbued with civil contempt power, not only statutorily through section 105(a) of the Bankruptcy Code, but inherently. This is a power "to enforce its orders and ensure judicial proceedings are conducted in an orderly manner." *In re Kimball Hill, Inc.*, 595 B.R. 84, 100 (Bankr. N.D. Ill. 2019), quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999).

The Court's July 28, 2016 order unambiguously required Backus to refrain from any act to collect on the state court judgment. While Backus "stands on" its original argument that a "misunderstanding" of what the order says—despite its clarity—and an aggressive phone call ostensibly about "settlement" and a filing of a petition for writ of attachment, which wasn't withdrawn until 12 days later, should not be deemed conduct that violates the Court's order, this Court already found, at a hearing on November 14, 2019, that those actions constitute contempt of its order. The question now is whether sanctions are appropriate, and in what form and amount.

Civil contempt proceedings may be classified as either coercive or remedial, but are not punitive in nature. *Jones v. Lincoln Elec. Co.*, 188 F.3d at 738 (citing *International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–28 (1994); *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir.1988)).

Mr. Hubbartt has repeatedly analogized his request for damages for violation of the Court's July 28, 2016 order as a violation of the discharge injunction, and the Seventh Circuit has provided some indication that, under the right circumstances, the victim of a discharge injunction violation might make a case for criminal contempt and therefore seek punitive damages, *see, e.g., Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001), "[t]he victim … might even be able to obtain punitive damages, though presumably only if

he could prove criminal contempt." *See also, In re Kimball Hill, Inc.*, 595 B.R. at 100. But those circumstances are not present here, as no determination on discharge of the instant debt has been made, and Mr. Hubbartt has not argued for criminal contempt. In sum, while the violation of the Court's order was patent, Mr. Hubbartt may not recover any amount of punitive damages.

Coercive sanctions are designed to compel the opposing party into acting in compliance with an existing court order, while remedial sanctions serve to compensate the moving party for losses sustained as a result of the contemnor's actions. *Id.* Here, coercive sanctions are unnecessary because Backus ceased and reversed its actions after reviewing the Court order. By the time Mr. Hubbartt filed his motion for contempt, the collection calls had ceased and the petition for writ was withdrawn.

As to remedial sanctions, there is little record basis to compensate the defendant's losses of "mental anguish and distress." AP-ECF Doc. No. 33, at 8. Mr. Hubbartt supplied no affidavit of his own. Attorney Micheletti's affidavit states that he would discuss Attorney Mayer's phone call about "garnish him til the day he dies" with Mr. Hubbartt and bankruptcy counsel. AP-ECF Doc. No. 47-2, at 4. Bankruptcy counsel's invoices reflect some client communication about the efforts at collection and resulting motion for contempt. AP-ECF Doc. No. 47-1, at 3(). The Court has no doubt that the gist of plaintiff's counsel's efforts were conveyed to Mr. Hubbartt, but there is no evidence lodged as to the toll it might have taken while at the same time Mr. Hubbartt knew his counsel was responding.

Mr. Hubbartt also seeks to recover attorney fees incurred by both his bankruptcy counsel ($4,751.00) and Attorney Micheletti ($1,155.00). Plaintiff's counsel asks the Court to employ its discretion and make no award. *See Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005) (citing *CFTC v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981)). Short of that, plaintiff urges that a number of counsel's entries show work by multiple lawyers on the same task, entries that are irrelevant to the motion for contempt

(i.e., review of jury verdict) and fees that are excessive. A court also should consider that a party's good faith, even where it does not bar civil contempt, may help determine an appropriate sanction. *Taggart*, 139 S. Ct. at 1802 (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801 (1987)).

      The Court finds little evidence of plaintiff's or plaintiff's counsel's good faith in the actions between May 20 through June 4, 2019. The communications with Attorney Micheletti were made in full knowledge of this Court's July 28, 2016 order, and nonetheless were aggressive violations of that order. Plaintiff's counsel should not confuse a voluntary mediation effort, conducted before trial, with an improper post-verdict collection effort. It was not Attorney Micheletti's duty to tell plaintiff's counsel what their obligations were under the Court's clear order. The err of the May 20 phone conversations was not remedied, but compounded by the filing of the unsupported petition for writ of attachment, and exacerbated by remaining on public file until June 4, 2019. While the motion for contempt was filed the next day, its preparation took place before that. Mr. Hubbartt's counsel had to deal with plaintiff's unwarranted violations of the order from May 20 forward.

      The Court agrees that the initial entry on bankruptcy counsel's invoice appears to include matters related to the trial or verdict itself, and not to the wrongful collection efforts, and so the billed amount of $742.50 is reduced to $247.50. Otherwise, the remaining amounts all concern work regarding the wrongful collection efforts and the motion for contempt. Where it may appear that Attorney Werle consulted other lawyers within her firm, those lawyers did not separately bill for that consultation, so there is no duplicative billing. Even though the Court ultimately did not rule in favor of defendant's argument on the punitive damage request, billing for that research and argument is not "excessive" and is compensable as part of actual damages. Litigants are entitled to make reasonable arguments. Accordingly, Steinhilber Swanson LLP's invoice is approved in the amount of $4,256.00 and Attorney Micheletti's invoice—to which plaintiff did not expressly object—is approved in the full

amount of $1,155.00, for a total of $5,411.00 in attorneys' fees as actual damages.

This amount serves to compensate Mr. Hubbartt's counsel in bringing the motion for contempt against Backus, who erred by acting in violation of the Court's July 28, 2016 order.

## CONCLUSION

For the reasons set forth above, the Court concludes that Backus Electric, Inc., through its counsel, acted in violation of a court order and acted in civil contempt. The Court awards $5,411.00 in attorneys' fees as a sanction, to be paid by Backus Electric, Inc. within 30 days of the date of this decision.

The Court will enter a separate order consistent with this decision.

Dated: April 10, 2020

By the Court:

Beth E. Hanan
United States Bankruptcy Judge